BOARD OF COMMISSIONERS OF THE CITY OF ELIZABETH-
TON v. T. M. BRUMIT et al.

Eastern Section.    September 3, 1927.

Petition for Certiorari denied by Supreme Court, December 5, 1927.

1. **Bonds.    Where assured mingles funds, bondsmen must share loss pro
rata.**
   In an action to recover against certain bondsmen of a town treasurer
where the evidence showed that the treasurer had mingled two funds and it
was impossible to tell from which the shortage accrued and the officer had
different bondsmen to secure each fund, held that the shortage should be
divided pro rata between the two bonds.

2. **Bonds.    Judgment.    Plaintiff entitled to a joint judgment against all,
defendants for the full amount of the shortage.**
   In an action to recover the shortage of an officer where the evidence
showed that two funds had been co-mingled and it was impossible to tell
from which the money had been taken, held that the plaintiff was entitled to
a judgment against all of the defendants for the full amount of the shortage
but as between the sureties the loss should be proportioned according to the
amount of each fund.

Appeal from Chancery Court, Carter County; Hon. Jos. A. Cald-
well, Special Chancellor.
Modified and affirmed.
Cox and Taylor, of Johnson City, and Miller, Seiler & Hunter, of
Elizabethton, for appellant.
Divine and Guinn, of Johnson City, and St. John and Gore, of
Bristol, for appellee.

PORTRUM, J.    This action was brought by the municipal corpo-
ration of Elizabethton against T. M. Brumit, a former recorder and
treasurer of the town, and also against the sureties on his official
bond, as well as upon a special bond executed by him to secure the
proceeds of a bond issue for schools.

Upon the hearing of the case the court found and decreed that
Brumit was short in his accounts to the amount of $3954.    The court
further found that because of the sale of certain bonds issued under
a late act of the legislature there came into Brumit's hands as
treasurer the sum of $22,680, to be expended under the terms of
the act in buying, remodeling, constructing and equipping two cer-
tain designated school buildings.    In addition to this sum there came
into his hands as recorder from the tax levy proper, including the
school levy, the sum of $34,156.95, making a total coming into his
hands as treasurer and recorder the sum of $56,836.95.

The accounts of Brumit were referred by the Chancellor to a special commissioner and he found that the accounts of all the funds were commingled, no books being kept from which it could be shown the fund in which the shortage belonged. This finding was concurred in by the Chancellor and the facts, as above stated, are not now in dispute.

For some reason the special commissioner reported that the bondsman, the American Surety Company of New York, surety for the special fund derived from the bond issue, was liable for the whole shortage, which was found to be $3954. The Chancellor did not agree with the conclusions reached by the commissioner, but held that the American Surety Company was liable for one-half, and the bondsmen on the treasurer's official bond were liable for the other half.

The official bondsmen now complain because they were held liable for one-half of the shortage. The American Surety Company of New York complains because it was held liable for one-half of the shortage. And the City of Elizabethton complains because it was not given joint judgment against all of the sureties. These three are the only issues advanced upon this appeal.

Dealing with the official sureties first:

It is first said that the shortage occurred in the fund derived from the bond sale, and an attempt is made to show by figures that this is true. For instance, it is claimed that only about $18,000 was expended for the purpose for which the bonds were sold, leaving in the hands of the treasurer an amount approximately equal to the shortage, which has since disappeared. This argument is fallacious, for the reason all the funds were commingled, and when Brumit dipped down into the commingled funds he took out an exact proportion out of all the funds. You had as well say that one could dip out of a diluted liquid the chemical of which it was diluted.

It is next said since Brumit was recorder and treasurer, then when money came into his hands as recorder, it is then to be considered that he held it as treasurer, and his bondsmen on his recorder's bond are not liable. This is not sound, because the terms of the bond provide for faithful performance of duty, and when the recorder commingled the funds he was guilty of a breach of duty. The bondsmen cannot escape for this reason.

But it is contended that since the bondsmen on the recorder's bond are personal, and the bondsman on the special treasurer's bond is a corporation receiving compensation, then that under the rules of the courts the bonds will be given a liberal construction as to the individuals and a strict construction as to the company, and, therefore, the individual should be relieved at the expense of the company. It is true that the courts liberally construe personal obligations arising from suretyship and strictly construe the obligations of corpora-

tions engaged in this business for a consideration. But the courts have not gone so far as to hold a corporation for a default on bonds signed by individuals, when the corporation was not a party thereto. You must bear in mind that there are two bonds here, and the company is surety only upon one. Then the court cannot relieve the personal sureties from their obligations under such circumstances. We hold that when the moneys of two funds have been commingled, then each fund shall answer for the defalcation of the officer on a pro rata basis. That technically Brumit defaulted out of each fund proportionately to the amount of the fund. It is impossible to equitably apportion it otherwise. Then if this is correct, the bondsmen on the recorder's bond are liable for the porportion assigned to that fund, and, therefor, to hold the company responsible for this sum goes beyond the contract of the parties and requires the company to pay the default arising under the recorder's bond.

Counsel representing the American Surety Company of New York by a process of reasoning figure that the default did not occur in the bond fund. It is shown that about $18,000 of the bond fund was expended for the purposes set out in the act, but that the balance, or an amount approximately that of the shortage, was voted out of the bond fund by the city aldermen to be used in the payment of school teachers. Now it is said the city got the benefit of this money, and to require the company to pay it the city would have the benefit of it twice. This is also fallacious, because, as was said before, the funds were commingled, and while the order specifies the bond fund, it cannot be said the fund was actually taken from the bond fund, since it was commingled, but was taken from the entire fund coming into the hands of the officer. If this is true, then the city will not get a double benefit in case the surety company answers for its proportion of the loss.

It results that the Chancellor is modified to the extent of apportioning the loss between the two different class of bondsmen in the ratio of the amount of the two funds which each are liable for. That is to say, the company was responsible for $22,680 of the total amount and the individual sureties are responsible for $34,156.95 of the total amount, and since the default amounted to $3,954, then the individual sureties are responsible for $2,373.84, and the company is responsible for $1576.26. ($3954÷$56,836=.0695x$34,156=$2373.-84.) Interest shall be added to the above amounts from the date of the filing of the bill.

We are further of the opinion that the assignment of error of the City of Elizabethton should be sustained, and it is entitled to a joint judgment against all of the defendants for the full amount of the shortage, but as between the sureties, the loss shall be as above proportioned. Both bonds contain a recital for the faithful perform-

ance of duty, and when Brumit commingled the funds, both set of bondsmen should be liable for the full amount because his act might cause a total loss in one account if judgments were rendered only against each party. Of course the judgment in no case should exceed the penalty of the bond, and it does not in this case.

As above modified the judgment of the lower court is affirmed and the surety company and individual bondsmen will each pay one-half the costs.

Snodgrass and Thompson, JJ., concur.